FILED

2005 Mar-28  PM 02:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LEON BARLOW, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | CV-04-CO-00931-S |
| | ] | |
| COLONIAL BANK, N.A., | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendant Colonial Bank, N.A.'s ("Colonial") motion for summary judgment, which was filed on January 31, 2005.  (Doc. 23.)  Plaintiff Leon Barlow has sued Colonial for race discrimination with respect to the terms and conditions of his employment and retaliatory discharge under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 (" § 1981") , as well as race discrimination with respect to his termination from employment under Title VII.  (Doc. 1.)  The issues raised in Defendant's motion for summary judgment have been briefed by both parties and are now ripe for

decision.  Upon full consideration of the legal arguments and evidence presented, Defendant's motion will be granted in all respects.

II.   Facts.[1]

Plaintiff Leon Barlow, an African-American male, was hired by defendant Colonial Bank, N.A., on or about June 11, 2001, to work as a blocking clerk in the Colonial Operations Center in Hoover, Alabama.  Anne Scholl, a white female manager of Item Processing at the Operations Center, interviewed and selected Plaintiff for the position.  Daniel Berry, a white male, served as Item Processing Transit Shift Leader and Mr. Barlow's immediate supervisor.  (Doc. 30 at F-1—2.)

While Mr. Barlow was employed as a blocking clerk, he received an oral warning for failure to follow procedures on July 16, 2001, and a "first" written warning for failure to follow proper procedure on October 26, 2001.

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Mr. Barlow signed documentation recording these reprimands and agreed he committed the errors outlined. (*Id*. at F-3; Pl. Dep. at 145—49.)

On January 4, 2002, Mr. Barlow was promoted to the position of Item Processing Transit Shift Leader. Mr. Berry, the former shift leader, was promoted to Item Processing Supervisor. (Doc. 30 at F-3—4.) Sometime in late February or early March, Mr. Barlow says that he informed Ms. Scholl that he felt he was being treated differently than Mr. Berry when he was in the position of shift leader. Plaintiff complained that Mr. Berry did not have to work months' end nor train other employees. This was the only statement Mr. Barlow made to Ms. Scholl. (*Id*. at F-4—5.) Plaintiff says, however, that in late March or early April, he also spoke with Renee Lumpkin, the Director of Human Resources at the Operations Center, and specifically used the words "racial discrimination." Ms. Lumpkin testified that she does not remember a complaint. (*Id*. at 6.)

While employed as shift leader, Mr. Barlow incurred additional written reprimands. On July 15, 2002, he was issued a "second" written warning for failure to follow procedures. On October 15, 2002, Mr. Barlow received a "third" written warning for failure to follow procedures. Then, on

November 9, 2002, Mr. Barlow was the subject of a "fourth" written warning for failure to follow procedures.  Mr. Barlow signed each of these documents and agreed he made the mistakes outlined.  (Pl. Dep. at 150—51, 165, 168—70, 251.)[2]   On January 2, 2003, Mr. Barlow was issued a fifth and "final" written warning after a mistake in the sorter room resulted in the loss of $20,066.  Mr. Barlow refused to sign the write-up because it was his last and because he maintained he was not responsible for the mistake.  (Pl. Dep. at 192—94.)

In June of 2003, Leonard Crear, an African-American male and Items Processing Operations Manager, informed employees that they would be participating in a "cross-training" program to learn the duties and responsibilities of other positions within the department.  (Doc. 30 at F-9.) Plaintiff told Mr. Berry that he thought the cross-training program was a "big

---

[2]Mr. Barlow contradicts part of this testimony in his affidavit, saying that the write-ups in October and November of 2002 were for mistakes made by another employee or employees—not him.   "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984.) Mr. Barlow clearly stated in his deposition testimony that he made the mistakes that are the subject of the reprimands issued in October and November of 2002.  He cannot create an issue of fact by then changing his story in a subsequently-drafted affidavit.

mistake." (*Id.*; Pl. Dep. at 236—37.)  Mr. Barlow then told Ms. Scholl that he was not interested in participating in the program.  (Doc. 30 at F-9; Pl. Dep. at 239, 301.)  Ms. Scholl informed Plaintiff that all supervisors and shift leaders would be required to undergo cross-training and Mr. Barlow did not have a choice.  (Doc. 30 at F-10.)  According to Plaintiff, he responded, "Okay.  Whatever you say." (*Id.*; Pl. Dep. at 239.)

When Plaintiff arrived at work on June 6, 2003, Ms. Scholl told him that she was writing him up for insubordination because he refused to participate in cross-training.  Already in possession of a "final" written warning, Mr. Barlow was informed that his employment was terminated. (Doc. 30 at F-11.)  Plaintiff subsequently filed a lawsuit against Colonial Bank, N.A., in this Court for race discrimination and retaliation under Title VII and § 1981.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322—23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the

nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion.

A.    Race Discrimination in Terms & Conditions of Employment.

In his complaint, Mr. Barlow alleges Defendant discriminated against him with respect to the terms and conditions of his employment under both Title VII and § 1981 because of his race.   (Doc. 1 at 4, 6.)   Plaintiff complained that his "job duties and expectations were greater than those assigned to Mr. Berry as a shift leader" and he was "held to a higher standard than Mr. Berry," a white male.  (Doc. 1 at 3.)  However, in his responsive submission to the Court, Plaintiff changes his argument and asserts that he was discriminated against because Defendant "*restricted* the job duties assigned to Mr. Barlow as shift leader compared to his white predecessor, Daniel Berry."    (Doc. 30 at A-21.) (emphasis added). Defendant counters that Colonial Bank is entitled to summary judgment on Plaintiff's terms and conditions claims because Plaintiff's Title VII claim is time-barred, Plaintiff cannot establish an adverse employment action to

prove a prima facie case, and there is no evidence of pretext.  (Doc. 24 at 15–22.)

"In a discrimination action brought under either Title VII or Section 1981, a plaintiff must first establish a prima facie case of discrimination." *Cooper v. S. Co.*, 390 F.3d 695, 725–26 (11th Cir. 2004).  Plaintiffs relying on circumstantial evidence use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See Sledge v. Goodyear Dunlop Tires N.A., Ltd.*, 275 F.3d 1014, 1015 n.1 (11th Cir. 2001); *Cooper*, 390 F.3d at 724 n.16.  Under *McDonnell Douglas*, a plaintiff establishes a prima face case of race discrimination by showing: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Once a plaintiff has established a prima face case of discrimination, "the defendant can rebut by offering a legitimate, non-discriminatory reason for the allegedly discriminatory act." *Cooper*, 390 F.3d at 725.  This burden is "exceedingly light . . . .  At this stage of the inquiry, the

defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Id.* (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)). "If the defendant successfully rebuts the plaintiff's prima facie case, 'the presumption of discrimination is eliminated.'" *Id.* (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). In order to survive summary judgment, the plaintiff must then "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* (quoting *Chapman*, 229 F.2d at 1024.)

Defendant argues that Plaintiff cannot establish that any differences between his job as a shift leader and the position previously held by Mr. Berry are adverse employment actions. (Doc. 24 at 17.) Plaintiff never specifies in his submission to this Court exactly how his job duties were restricted, and he cites no evidence that shows he had greater responsibilities or was held to a "higher standard" than his white

predecessor.   Plaintiff also fails to cite to any law that supports his allegations that changes in job responsibilities from one position-holder to the next are adverse employment actions.   A change in duties when an employee takes a new position, without more, is not an adverse employment action.  Therefore, Plaintiff has not established a prima facie case of race discrimination in the terms and conditions of his employment.

Even if this Court were to assume, however, that Plaintiff had more or less job duties and responsibilities than his white predecessor and this constituted an adverse employment action under the law, Plaintiff has not produced any evidence of pretext.  Defendant has explained that prior to holding the position of shift leader, Mr. Berry actually had a higher position from which he was demoted.  As shift leader, Mr. Berry retained some of his duties from his previous job: "[H]e was still continuing to prepare to interview applicants for vacant positions.  He was also preparing schedules, preparing counseling documentations [sic] for errors as well as annual review documents in terms of the appraisal process for employees."  (Dep. of Anne Scholl at 89.)  Defendant has also proffered that Plaintiff was not skilled enough to perform some of the duties and responsibilities completed

by Mr. Berry.   (*Id.* at 90.)   These explanations are legitimate, nondiscriminatory reasons for the differences between the job duties performed by Mr. Barlow and Mr. Berry.

Plaintiff argues that these two explanations alone demonstrate pretext for racial discrimination because they are "inconsistent." (Doc. 30 at 22.) These explanations are not inconsistent and they do not demonstrate pretext.  Plaintiff offers no other evidence to show discriminatory intent.

"Plaintiff bears the burden of proving that the employer intentionally discriminated against him because of his race." *Cooper*, 390 F.3d at 723. A plaintiff "must present '*significant probative*' evidence on the issue [of pretext] to avoid summary judgment." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (emphasis added).  "Conclusory allegations of discrimination without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions." *Id.* (quoting *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443–44 (11th Cir. 1996)).  Because Plaintiff has offered absolutely no evidence from which a reasonable jury could find that Defendant

discriminated against him in the terms and conditions of his employment because of his race, Defendant is entitled to summary judgment on Plaintiff's terms and conditions claims under both Title VII and § 1983. It is therefore not necessary for this Court to address Defendant's statute of limitations defense.

B.    Race Discrimination in Termination from Employment.

Plaintiff also alleges that Defendant unlawfully discriminated against him with respect to his termination from employment under Title VII. (Doc. 1 at 6.) Defendant argues that it is entitled to summary judgment on this claim because Plaintiff cannot establish a prima facie case of discrimination (Doc. 24 at 26) and has offered no evidence of pretext (*Id.* at 32).

To succeed on a discriminatory discharge claim, a plaintiff must show: "(1) that [he] is a member of a protected minority, (2) that [he] was qualified for the job from which [he] was discharged, (3) that [he] was discharged, and (4) that [his] former position was filled by a non-minority." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995). Defendant argues that Plaintiff has not established a prima facie case because after his termination, Plaintiff was replaced by Daniel Powell, an

African-American male.  (Doc. 24 at 27; Aff. of Anne Scholl at 2.)

Mr. Barlow correctly points out that a plaintiff "may have a prima facie case based on the first three requirements despite the fact that the employer hired a minority to fill the vacancy left by the plaintiff." *Edwards*, 49 F.3d at 1521.  However, the Court must "consider whether the fact that a minority was hired overcomes the inference of discrimination otherwise created by the evidence presented by the plaintiff." *Id*.  The Eleventh Circuit has listed several factors that may be taken into account: "the length of time between the discharge and the replacement, whether the replacement by the hired minority occurred after the filing of an E.E.O.C. complaint, and, if the hired person had a history with the employer, whether it was a positive history." *Id*.  In short, this Court must determine whether the hiring of a minority is pretext to hide actual racial discrimination in Plaintiff's termination.  *See id*.  Plaintiff simply has not produced any evidence that Defendant's promotion of Mr. Powell into Plaintiff's position was pretextual.  Therefore, Plaintiff has failed to meet his burden and Defendant is entitled to summary judgment on Plaintiff's claim of  discriminatory discharge under Title VII.

C.    Retaliatory Discharge.

Finally, Plaintiff alleges that Defendant retaliated against him under Title VII and § 1981 by terminating his employment due to his complaints about race discrimination.  (Doc. 1 at 5, 7.)  Defendant argues that it is entitled to summary judgment on these claims because Mr. Barlow cannot establish a prima facie case nor prove pretext.  (Doc. 24 at 27—36.)

In a retaliation case, a plaintiff "must show the following to establish a prima facie case: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action."  *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, (11th Cir. 1997).[3]  To establish a causal connection, a plaintiff "need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)).  "At a minimum, a plaintiff must generally establish

---

[3]The Eleventh Circuit Court of Appeals has acknowledged that "whether the elements of Title VII and § 1981 retaliation claims are the same is an 'open question' in this Circuit." *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1120 n.10 (11th Cir. 2001). However, the parties have agreed to the elements of a prima facie retaliation claim (Doc. 30 at A-3), so this Court does not have a need to address this issue.

that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence." *Id.* (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)).

Defendant argues that Plaintiff's complaint to Anne Scholl in late February or early March does not constitute statutorily protected activity and Plaintiff has not produced any evidence that Ms. Scholl was aware of his statement to the director of human resources at the time of his termination. The Court agrees. While informal complaints to superiors about unlawful discrimination are clearly within the scope of statutorily protected conduct, *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989), there is a difference between a personal grievance and a statement about perceived conduct that violates the law. Nowhere in Mr. Barlow's complaint to Ms. Scholl did he make any allegations that the differences between his duties and Mr. Berry's past duties were motivated by race or were in any way contrary to the law. While Mr. Barlow alleges he eventually did use the words "race discrimination" with Ms. Lumpkin, he

has not produced any evidence, circumstantial or otherwise, that Ms. Scholl, the alleged decisionmaker in this case, had knowledge of that complaint.

Even if this Court assumes that Plaintiff did engage in statutorily protected conduct, Mr. Barlow has not established a causal link between that activity and his termination from employment.  According to Mr. Barlow, he spoke with Ms. Scholl in late February or early March of 2002, and complained to Ms. Lumpkin in late March or early April of 2002. Plaintiff argues that he has established causation because "Ms. Scholl's pattern of retaliation towards Mr. Barlow began shortly after Mr. Barlow complained.  Ms. Scholl seized every opportunity she could to move forward towards firing Mr. Barlow."  (Doc. 30 at A-11.)  Mr. Barlow's first written reprimand as shift leader occurred on July 15, 2002.  His subsequent reprimands occurred in October and November of 2002, and January of 2003.  Mr. Barlow was then terminated in June of 2003.  While Plaintiff is correct that "opportunities for retaliation do not always immediately present themselves," (*Id.*), this Court finds it highly doubtful that Ms. Scholl waited three months to "seize" an opportunity to discipline Mr. Barlow and terminate him fourteen months after his alleged complaint.  Plaintiff has

failed to establish that his complaints and termination are "not wholly unrelated," *Clover*, 176 F.3d at 1354, and he has not shown a prima facie case of retaliation.

Even if this Court concluded that Plaintiff established the elements of a prima facie case, that would not "relieve [him] of the burden of overcoming any legitimate reasons articulated by the defendants." *Simmons*, 757 F.2d at 1189.   Defendant maintains that Plaintiff was discharged for insubordination following a "final" written warning. (Doc. 24 at 33.)  This is a legitimate, nondiscriminatory reason for termination from employment.

Plaintiff argues that he has established pretext because he was not insubordinate and because two other white employees, Leonard Crear and Daniel Powell, were not terminated for insubordination on other occasions. A self-serving assertion that one was not insubordinate does not establish unlawful termination, *see Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004), and Plaintiff has not introduced any evidence that Ms. Scholl did not believe that Mr. Barlow had acted in an insubordinate manner. *See Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1260 (11th Cir. 2001)

("[B]elief alone is a sufficiently race-neutral reason."). In addition, Plaintiff has not established that Mr. Powell or Mr. Crear, both of whose reprimands for insubordination occurred at the "final" written warning stage and not after, are similarly situated employees with whom this Court can draw any kind of relevant comparisons. Because Plaintiff has failed at every step of the analysis, summary judgment is due to be granted on Mr. Barlow's claims of retaliatory discharge under both Title VII and § 1981.

V.     Conclusion.

For the reasons stated above, Defendant's motion for summary judgment is due to be granted in all respects. A separate order in conformity with this opinion will be entered.

Done this 28th day of March 2005.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
105854